# Izydorczyk v. Reading Car Wheel Company, Appellant.

*Negligence—Master and servant—Dangerous machine—Failure to instruct.*

1. Where two inexperienced workmen in a manufacturing establishment are directed to work at a dangerous machine without any instruction as to how to operate the apparatus, or as to how to use without danger a portion of the machine which had worn smooth or shiny, and one of the men is injured while the two are jointly operating

the machine, the question of the employer's liability for the injuries sustained is for the jury.

2. In such a case a workman who had left the establishment ten or eleven months before the accident may testify, not as to the smooth and shiny condition of the particular device at the time of the accident, but that such part grew smooth and shiny through use, and that in that condition it became dangerous, and that he had frequently reported this to the superintendent.

Argued March 1, 1909. Appeal, No. 297, Jan. T., 1908, by defendant, from judgment of C. P. Berks Co., Aug. T., 1907, No. 44½, on verdict for plaintiff in case of Thomas Izydorczyk v. Reading Car Wheel Company. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before ENDLICH, P. J.

The facts are stated in the opinion of the Supreme Court.

When John Schultz was on the stand the following offer was made:

Mr. Nicolls: Plaintiff offers to prove by the witness on the stand that when the hook by which this hammer was lifted had been used for some time it became worn and that a slight touch or pulling of the rope attached to the hook would catch it. Also that after it had become worn the hammer would, when lifted, fall, either without any known cause or from the touching of the machinery for lifting the hammer or from the touching of the rope attached to the hook. That this happened on numerous occasions to the witness's knowledge and that he had reported the matter to the superintendent in charge of the works and the superintendent had done nothing to remedy it. To be followed by evidence that the machinery and apparatus for breaking car wheels was in the same condition as to operation at the time that this man worked at it and at the time that Izydorczyk was injured. This for the purpose of showing negligence on the part of the defendant.

The Court: You mean that the hook was the same hook?

Mr. Nicolls: Not the same hook. But we have already

shown that the hook was worn: now we will show by this that if it was worn it was very liable to slip.

Mr. Derr: As of what time do you propose to have the witness say that?

Mr. Nicolls: The whole period he was there.

Mr. Derr: That is, to May, 1905?

Mr. Nicolls: Yes, sir.

Mr. Derr: We object to that, because the witness left there in May, 1905, which is perhaps ten or eleven months before the happening of the accident; it is too remote from the time of the happening of the accident, to be pertinent for the showing of the condition of the apparatus at the time of the accident. And, moreover, the offer itself shows that there is better evidence, because the offer contemplates a showing that the apparatus remained in that condition up to the time of the accident; so the plaintiff has witnesses who can show the condition of that apparatus at the time of the accident and just before. It is therefore not the best evidence.

Mr. Nicolls: I think the offer shows that the operation was the same, the method of operation was the same at the time that this man was there and at the time that the accident happened to Izydorczyk.

Mr. Derr: With that explanation, the offer is open to another objection, and that is, that the smoothness of the hook which it is proposed to show by this witness was a smoothness that existed ten or eleven months before, and it is not proposed to show that there was that smoothness or any similar condition at the time of the happening of the accident.

The Court: I take it that the offer is to prove in substance by a man who has had six years' experience in the handling of this machine that one of the results of the use of it was that from time to time the hook that held this hammer became smooth and that when that was the case the hammer was more apt to fall and became more dangerous, of course, to anybody working under it or in the neighborhood of it than when the hook was in a new condition?

Mr. Nicolls: Yes, sir.

The Court: That the defendant had been notified of that

fact and omitted to renew the hook which was in place at the time when this plaintiff's injury occurred; is that the idea?

Mr. Nicolls: That is about it.

Mr. Derr: I want to add to my objections that the testimony is generally irrelevant and incompetent.

The Court: Admitted, as bearing upon the duty of the defendant. Exception for defendant. [1]

The court instructed the jury in part as follows:

[In the first place as to the defective machine. You have seen this apparatus and you know all about it from what you have yourselves seen and from the testimony. The question for you to determine will be, Was there anything wrong with it that caused the hammer to fall? You understand that a defect in a machine which does not produce the injury is of no consequence in the case. The question is, Was there anything wrong with this machinery that made the hammer fall when it fell and injured the plaintiff?] [2]

[When we come to the allegation that this machine was defective, I don't recall anything in the case except the claim that this particular hook had been in use for a considerable length of time and that it had worn, and so had the eye into which it was inserted holding the hammer—that the defendant company had notice of this—and that the tendency of this was to cause the hammer to drop even when the hook was properly inserted, without the agency of the pulling of the releasing rope or cord. That will be a question for you to determine. Was that true? Was there anything in this hook and in the eye that was out of repair? Was there any knowledge of that on the part of the defendant company? Was it their business to change that, to make any different arrangement about that than what they had? Was there anything wrong, in short, with this machinery, and if there was anything wrong with it, did that or did that not cause the dropping of the hammer.] [3]

Verdict and judgment for plaintiff for $2,650. Defendant appealed.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (2, 3) above instructions, quoting them, and (6) in refusing binding instructions for defendant.

*Cyrus G. Derr,* with him *James B. Mercer,* for appellant.— The court below should have given the jury binding instructions to find for the appellant: Wojciechowski v. Sugar Refining Co., 177 Pa. 57; Reese v. Clark, 146 Pa. 465.

*Frederick Nicolls,* of *Rick & Nicolls,* with him *Stevens & Stevens,* for appellee.—The case was for the jury: Lebbering v. Struthers, 157 Pa. 312; Zearfoss v. Norway Iron, etc., Co., 218 Pa. 594; Oil Co. v. Torpedo Co., 190 Pa. 350; Folk v. Schaeffer, 186 Pa. 253; Hughes v. Fayette Mfg. Co., 214 Pa. 282; Bardsley v. Gill, 218 Pa. 56; Sopherstein v. Bertels, 178 Pa. 401.

OPINION BY MR. JUSTICE POTTER, October 11, 1909:

The plaintiff in this case sought to recover damages for personal injuries, resulting from the alleged negligence of his employer. The trial in the court below resulted in a verdict and judgment for the plaintiff, and the defendant has appealed. It appears from the evidence, that at the time of the accident, plaintiff had been working for seven months, as a laborer, for the defendant. Upon the day in question, the superintendent came to plaintiff and ordered him to go to work upon the "drop." Another laborer, Nowartarski, who had been employed by defendant about five months, was also sent to work at the "drop." This was an apparatus used to break car wheels. It was located in a shed, over forty feet high, and consisted of a lump or ball of iron, weighing about 1,800 pounds, called the hammer. There was a ring or eye on the upper side of the hammer, into which fitted an iron hook suspended from the roof of the shed by a wire rope. There was a rope that started an electric motor by which the hammer could be raised to the roof, and another, attached to the hook, by which the latter might be released from the eye upon the hammer. It was the duty of the workmen to

place the hook in the eye, as the hammer lay on the floor, then to raise it about six feet and while holding it stationary at that point, to place two car wheels beneath it, one upon the other, then to raise it to the roof and, pulling the rope which released the hook, permit the hammer to fall upon, and break the wheels underneath. After the fragments of the broken wheels had been removed, the process was repeated. When the hammer was properly hooked, two iron fingers held the hook in place by force of gravity, until it was released by pulling the release cord.

Both plaintiff and Nowartarski testified that no instructions were given them by the superintendent, or by anyone else, as to how the work should be done, and they were not warned of any danger connected with it. They had seen the device being operated by others. The evidence further shows that after plaintiff and Nowartarski went to work on the drop, they operated it five or six times, breaking up ten or twelve wheels. Sometimes they had difficulty in hooking the ball properly, and had to make several attempts to hook it. About an hour after they began work, it seems that Nowartarski hooked the hammer, and plaintiff started the motor and lifted the hammer six feet. Nowartarski put a wheel under it, and then took the elevator cord and began to lift the hammer towards the roof, while plaintiff was putting the second wheel in position. Nowartarski was holding one of the cords, and pulling the other up, when the hammer fell prematurely, rolled upon plaintiff and injured him. Nowartarski, who was called as plaintiff's witness, denied positively that he had made any mistake or pulled the wrong cord, and claimed that he could not have released the hammer by pulling the release cord at the height at which it was when it fell. Plaintiff said that he noticed that the hook was old, because it was shiny.

The first assignment of error is based on an exception to the admission of testimony of plaintiff's witness, John Schultz, who had worked upon the drop for a period of six years, ending some ten or eleven months before the accident. The offer was to show that the hook, when worn, was easily de-

tached from the hammer, and that he had frequently reported this to the superintendent. The object of this testimony was not to show that the particular hook used at the time of the accident was worn, but that any hook grew smooth and shiny through use, and when in that condition a light pull, or a mere touch on the releasing rope would cause the hammer to fall. For this purpose the testimony was admissible. There was other evidence sufficient to go to the jury, as to the actual condition of the hook, and as to whether it was at the time of the accident worn smooth and shiny. The superintendent testified that he could not remember that the hook was ever changed during the three or four years prior to the accident. We find nothing in the evidence to show that the hook was changed, after complaint in regard to it was made by Schultz. There was no break in the apparatus, and no visible defect in the hook, but the danger in its use apparently arose from its smooth and slippery condition. Under such circumstances, it was a question for the jury, as to whether proper warning as to the use of the apparatus was given to the plaintiff, and to his companion who worked with him. It was necessary, owing to the manner in which they were required to work, that each should understand the condition of the appliance. As the learned trial judge says, the hook had to be inserted by one or the other, or by both together, according to circumstances.

Both of the men were inexperienced, and were taken from ordinary day labor, and set to work with a device, which according to the testimony of the superintendent, was dangerous in operation, if not handled correctly. The evidence upon the part of the plaintiff is, that no instructions were given, and that nothing was said to the two green men, about the danger of touching the pulling ropes while the hammer was suspended, or in using a hook worn smooth or shiny. They were contradicted as to this by the foreman, who said he showed them how to work the apparatus; so that it became a disputed question of fact, as to whether instructions were given.

We agree with the court below that under the charge, and

upon the evidence in this case, the verdict of the jury must mean that "the occurrence is to be explained on the ground of a mistake in the operation of the apparatus by both employees, due to their uninstructed ignorance of its proper manipulation, i. e., by a defective insertion of the hook, and the raising of the hammer thus imperfectly secured, neither plaintiff nor his companion being qualified by instruction or experience to discern the mistake made by either." There was enough in the evidence to support such a finding.

It was for the jury to determine the disputed questions of fact, and to draw therefrom the necessary and reasonable inferences. The assignments of error are overruled, and the judgment is affirmed.